Robert S. Green (State Bar No. 136183)
James Robert Noblin (State Bar No. 114442)
Lesley E. Weaver (State Bar No. 191305)
**GREEN & NOBLIN, P.C.**
700 Larkspur Landing Circle, Suite 275
Larkspur, CA  94939
Telephone:  (415) 477-6700
Facsimile:  (415) 477-6710
Email:  cand.uscourts@classcounsel.com

William Houck (*pro hac vice*)
Houck Law Firm, P.S.
4045 262nd Ave. SE
Issaquah, Washington 98029
(425) 392-7118

Attorneys for Plaintiff

FILED

2013 FEB 20 P 3: 25

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JSC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JOHN DOE, individually and on behalf of all the members of the Class of persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PROJECT FAIR BID, INC., MAYFIELD XIII, FOUNDATION CAPITAL VI, L.P., FIRST ROUND CAPITAL II, L.P., NICOLAS DARVEAU-GARNEAU, BRANDON RAMSEY, RAJIL KAPOOR, CHARLES MOLDOW AND JOSH KOPELMAN,<br><br>Defendants. | Case No.: C 13 0759<br><br>**CLASS ACTION COMPLAINT FOR RICO VIOLATIONS**<br><br>DEMAND FOR JURY |

CLASS ACTION COMPLAINT FOR RICO VIOLATIONS

1     1.     Plaintiff, by and through his counsel, upon personal knowledge as to his own acts

2 and beliefs, and upon information and belief as to all matters based upon investigation of

3 counsel, alleges as follows:

4     2.     The Plaintiff alleges that the Defendants, engaged in an illegal gambling

5 enterprise because Project Fair Bid, Inc. distributed prizes by chance to persons who paid

6 consideration for the chance to purchase prizes at a discount. Defendants Mayfield XIII,

7 Foundation Capital VI, L.P., First Round Capital II, L.P., Nicolas Darveau-Garneau, Brandon

8 Ramsey, Rajil Kapoor, Charles Moldow and Josh Kopelman — knowingly participated in the

9 operation of the illegal gambling enterprise, (The BigDeal.com Enterprise), by providing

10 management support, technical support, ownership interest and financial support.

11     3.     Defendants were engaged in an illegal RICO Enterprise in violation of state and

12 federal gambling statutes and federal wire and bank fraud statutes.

13               **I.     JURISDICTION AND VENUE**

14     4.     This Court has subject-matter jurisdiction over civil RICO actions under 18

15 U.S.C. § 1964(c). Defendant Project Fair Bid, Inc. transacted business throughout the United

16 States over the internet.

17     5.     Venue is proper pursuant to 28 U.S.C. §§ 1391, 1332 and 1453. The Terms of

18 Service posted on BigDeal.com contained the following statement:

19     THESE TERMS AND ANY DISPUTE RELATING TO THESE TERMS WILL BE
GOVERNED BY THE LAWS OF THE UNITED STATES AND THE LAWS OF THE

20 STATE OF CALIFORNIA, WITHOUT REGARD TO U.S. OR CALIFORNIA
CHOICE OF LAW RULES. YOU AND BIGDEAL.COM AGREE AND CONSENT

21 THAT JURISDICTION, PROPER VENUE, AND THE MOST CONVENIENT
FORUMS FOR ALL CLAIMS, ACTIONS, AND PROCEEDINGS OF ANY KIND

22 RELATING TO BigDeal.com OR THE MATTERS IN THESE TERMS WILL BE

23 EXCLUSIVELY IN COURTS LOCATED IN SANTA CLARA, CALIFORNIA.

24     6.     The Court has personal jurisdiction over the parties because Plaintiff submits to

25 the jurisdiction of the Court, and Defendants are residents and citizens of the state of California

26 and their principal place of business is in this state.

27

28

## II.   PARTIES

7.     Defendant, Project Fair Bid, Inc. was the corporation through which the Defendants conducted their illegal gambling enterprise. Project Fair Bid, Inc. was incorporated in Delaware in 2009 with its principal place of business at San Francisco, California. It conducted internet auctions under the name BigDeal.com. (Project Fair Bid, Inc. is referred to herein as BigDeal.com).

8.     Defendants Mayfield XIII, Foundation Capital VI, L.P. and First Round Capital II, L.P. are venture capital funds run by venture capital firms with offices in San Francisco and Menlo Park, California, doing business as Mayfield Fund, Foundation Capital and First Round Capital. In July 2009, these venture capital funds provided BigDeal.com with $4.5 million.

9.     Rajil Kapoor is a Venture Partner at Mayfield Fund. In July 2009, Mr. Kapoor began serving as a director on the board of BigDeal.com.

10.    Charles Moldow is a General Partner of Foundation Capital. In July 2009, Mr. Moldow began serving as a director on the board of BigDeal.com.

11.    Josh Kopelman is a Partner at First Round Capital. In July 2009, Mr. Kopelman began serving as a director on the board of BigDeal.com.

12.    The Defendants identified in paragraphs 8-11 gave management advice and provided money and financing to BigDeal.com in exchange for seats on the board of directors, stock ownership, dividends, income and the distribution of revenues. The purpose of the money and financing was to provide working capital and financial support for BigDeal.com in furtherance of the gambling enterprise.

13.    Defendants Nicolas Darveau-Garneau and Brandon Ramsey were the founding partners of BigDeal.com. They helped manage, operate and finance BigDeal.com. Darveau-Garneau and Ramsey helped BigDeal.com obtain financing from the other Defendants. Darveau-Garneau was the CEO of BigDeal.com and had ownership and control over the gambling enterprise and derived income and profits therefrom. Ramsey had ownership and control over the gambling enterprise and derived income and profits therefrom.

1    14.    All Defendants provided management support and financial support, to the
2    operation of BigDeal.com including matters that related to conducting business throughout the
3    United States. Mayfield XIII, Foundation Capital VI, L.P. and First Round Capital II, L.P.
4    allowed BigDeal.com to state on its website that BigDeal is backed with an experienced team
5    and millions of dollars in venture capital funding from investment groups such as the Mayfield
6    Fund, First Round Capital and Foundation Capital, with a view toward promoting
7    BigDeal.com's legitimacy, financial stability and financial backing. The participation of these
8    firms and their partners in the business of BigDeal.com was reported on TechCrunch.com.

9    15.    The subject matter of any writing or alleged contract between Plaintiff and
10   Defendants involved illegal gambling which precludes contract formation and renders any
11   contract void or voidable.

12   16.    Plaintiff is a citizen of the State of Washington. In November 2010, Plaintiff used
13   a credit card to transact business with BigDeal.com over the Internet and lost money because of
14   Defendants' illegal gambling enterprise. Plaintiff should be allowed to proceed anonymously
15   since the threat of prosecution for illegal gambling outweighs the need to have his name
16   revealed.

17                           **III.    FACTS**

18   17.    From 2009 to 2011, Defendants in association with Project Fair Bid, Inc.,
19   operated an Internet website, BigDeal.com, that it called a "penny auction." BigDeal.com
20   charged an entry fee and bidding fees for the chance to win prizes. This conduct violates the
21   state gambling laws of all states, including Plaintiff's home state of Washington, WASH. REV.
22   CODE § 9.46 et seq. and BigDeal.com's domicile state of California.

23   18.    In order to participate in BigDeal.com's "auctions" players were charged entry
24   fees that ranged in price from $22.50 to more than $500. These entry fees were similar to
25   purchasing poker chips and were used to place "bids".

26   19.    After registering and paying the entry fee, the players bid on "auctions" that
27   appeared on webpages. Each "auction" contained a designated box that, when clicked, charged
28   a nonrefundable $.75 fee to the player's account. Clicking the box afforded the players a chance

-3-

1  to win the designated "auction" prize. The player lost the chance to win the prize when another

2  player purchased a bid. Each "auction" started at $.00, but unlike a normal auction, each "bid"

3  increased the price of the merchandise only by a penny, not by an amount chosen and

4  specifically bid by the player. In addition, whenever any player purchased a chance to win,

5  twenty seconds or less was added to a countdown timer. BigDeal.com auctions were similar to

6  conducting an instant scratch-off lottery; if a participant loses (*i.e.*, when another player

7  purchased a bid); like a scratch–off lottery, the participant must purchase another $.75 bid to

8  have any chance of winning the prize. Only the last player to purchase a bid before time runs

9  out wins the right to purchase the prize.

10        20.    In BigDeal.com's "auctions," players paid $.75 each for chances to win

11  discounted prices on prizes such as Apple iPods, gift cards, netbooks, and laptop computers.

12        21.    In a BigDeal.com "auction," the players themselves did not have ultimate control

13  over who was the highest bidder (and hence the winner of the prize). Rather, the winner was

14  contingent upon the chance of being the last player to purchase a $.75 chance (*i.e.*, a "bid")

15  before time expires.

16        22.    All failed "bids" were revenue to BigDeal.com. If a player "bid" 200 times, he

17  or she lost $120 (200 x $.75) to BigDeal.com. All "bids" that did not result in a winning bid

18  were revenue to Defendants.

19        23.    Players could purchase chances to win in either of two ways: (a) by clicking a

20  designated box on the computer screen; or (b) by choosing to have BigDeal.com's computerized

21  "bidding" program (called "Bid Buddy") randomly purchase the chance to win when the timer

22  drops below 30 seconds. Under the Bid Buddy option, players did not even need to have their

23  computers turned on to participate.

24        24.    According to BigDeal.com's website, "Bid Buddy" would enter bids when the

25  auction fell under the 30 second reset time and it bid at a random time within that period. Bid

26  Buddy was programed to beat all other bidders. Thus, if a Bid Buddy was in play, manual

27  participants would have no chance of winning. BigDeal.com did not disclose this fact to the

28  players, nor did it disclose to the players when a Bid Buddy was in play.

1    25.    At any time, any number of players could activate and utilize Bid Buddy, as long
2    as they activated it when there was time remaining on the clock.

3    26.    In a BigDeal.com "auction", there were tens to hundreds of bidders, and
4    "bidding" could be rapid and frenzied, as each player and Bid Buddy were chancing the future
5    unknown result of being the last to bet, in order to win the merchandise.

6    27.    BigDeal.com conducted hundreds of "auctions" each day.

7    28.    The descriptions of the penny auctions provided on the BigDeal.com website
8    were misleading in that they failed to accurately describe the enterprise on which the bidders
9    spent their money.  These descriptions have a natural tendency to influence, or are capable of
10   influencing, those who read them to participate in the penny auctions without understanding
11   certain fundamental characteristics of those auctions, thereby depriving those who participate of
12   the benefit of their bargain.  In particular:

13              a.    The BigDeal.com website did not advise players that it was a gambling
14                    website that violated state and federal gambling laws.

15              b.    The BigDeal.com website purposely made it appear that it was a legal
16                    website in compliance with state and federal laws.

17              c.    BigDeal.com failed to state the odds of winning the auctions.

18              d.    BigDeal.com did not advise participants that they had no chance of
19                    winning if other participants placed bids with Bid Buddy, because Bid
20                    Buddy was programmed to beat all other bidders.

21              e.    BigDeal.com did not advise when a Bid Buddy was in play and thus, that
22                    they had no chance to win the prize.

23              f.    BigDeal.com's website enticed participation in the gambling scheme by
24                    falsely advertising: "HUGE SAVINGS. UP TO 98% OFF!" "It's as easy
25                    as 1-2-3". "Winners save around 75% on average, and many save 98% or
26                    even more." "Winning can be surprisingly easy or easier said than done,
27                    depending on who else is bidding." "We guarantee you a fair chance to
28                    win a great deal". "Everyone's a winner on BigDeal.com". "You can't

-5-

1  lose" and "come on, you have nothing to lose". "Can everyone be a
2  winner? Absolutely!"

3  g.  BigDeal.com's website enticed participation in the gambling scheme by
4  falsely claiming that it was easy to win, that participants could expect to
5  save large amounts of money and that they "can't lose".

6  h.  BigDeal.com's website enticed participation in the gambling scheme by
7  falsely claiming that BigDeal.com's auctions require skill, but these
8  statements were false because winning was contingent upon chance, since
9  anyone could place another bid and players did not have control over
10  other player's actions. Furthermore, the use of the Bid Buddy did not
11  involve the use of a player's skill.

12  i.  BigDeal.com's website enticed participation in the scheme by falsely
13  promising that the merchandise was new and that it was sold with good
14  title, when in fact much of the merchandise, such as Apple, Inc.,
15  merchandise is sold without good title or warranties, because Apple does
16  not allow the sale or redistribution of its products, other than through
17  authorized dealers.

18  j.  BigDeal.com's website enticed participation in the scheme by advertising
19  the investments of venture capital firms on the BigDeal website, to give
20  the site the appearance of running a legal, upstanding business with
21  sufficient financial support and backing.

22  29.  BigDeal.com did not have the requisite licenses to conduct gambling activities in
23  any state.

24  30.  BigDeal.com maintained accurate computer records of each auction and each
25  person (a "player") who registered to participate. This information included all players' names,
26  addresses, phone numbers, user names, passwords, and credit card numbers. The records
27  included the players bidding records by date and time, the date and time of each losing bid and
28  each winning bid, the prizes won by each player, and the cost of those prizes to BigDeal.com.

-6-

1  The total losses for each player and the winnings acquired by BigDeal.com can be readily
2  computed from the company's detailed computer records, which can be obtained through
3  discovery.

4      31.    BigDeal.com's penny auctions involved all the elements of gambling: (1)
5  consideration, (2) chance, and (3) prize.

6      32.    Consideration: As BigDeal.com's website admitted, the payment of
7  consideration was required in order to sign up and bid.

8      33.    Chance: As BigDeal.com's website admitted, an element of chance was involved
9  with bidding and winning the prize.

10     34.    Prize: As the BigDeal.com's website admitted, the object of the bidding was to
11 win prizes.

12     35.    BigDeal.com's illegal gambling revenues are estimated in excess of $100
13 million.

14                    **IV.    CLASS ALLEGATIONS**

15     36.    The Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil
16 Procedure, on behalf of himself and a class comprised of all persons who, from BigDeal.com's
17 founding in 2009 to its closing in 2011, paid money to BigDeal.com in the course of
18 participating in BigDeal.com's penny auctions.

19     37.    Excluded from the class are Defendants, any entity in which the Defendants have
20 a controlling interest, any employees, officers or directors of the Defendants, the legal
21 representatives, heirs, successors, and assigns of Defendants, any judge or employee of the
22 Court assigned to work on this lawsuit, and Plaintiff's attorneys and staff.

23 **A.    Numerosity.**

24     38.    Although the exact size of the class is unknown, Plaintiff believes that the class
25 numbers in the thousands. Accordingly, the class is so numerous that joinder of all class
26 members is impracticable. Discovery is necessary to reveal the exact size, but Defendants'
27 computer records of class members will reveal this information.

28

**B.    Commonality.**

39.    There are numerous questions of law and fact common to the Class, including, but not limited to:

      a.    Whether Defendants operated a gambling enterprise;

      b.    Whether BigDeal.com's schemes for the distribution of items of value are illegal lotteries and gambling under state and federal law;

      c.    Whether BigDeal.com owns, possesses, or operates illegal gambling devices in violation of state and federal law;

      d.    Whether the subject matter of the contract between BigDeal.com and the members of the class precludes contract formation and renders any asserted contract void;

      e.    Whether Defendants violated the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. §§ 1961-68, because they associated with an enterprise that engaged in or affected interstate or foreign commerce by conducting or participating, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt; *see* 18 U.S.C § 1961(c);

      f.    Whether the Defendants conspired to violate 18 U.S.C § 1961(c), thereby violating 18 U.S.C. § 1961(d).

**C.    Typicality.**

40.    Plaintiff's claims are typical of the claims of the class as a whole. Plaintiff has the same interests in this matter as all other class members, and his claims are typical of all class members. The Plaintiff is an adequate representative of the class because his interest does not conflict with the interests of the class. Plaintiff and all class members have sustained damages arising out of Defendants' common course of conduct outlined in this Complaint, and the damages of each class member have been caused by the same misconduct.

**D. Adequacy.**

41.     The Plaintiff will fairly and adequately protect the interests of the class. The interests of the Plaintiff are coincident with, and not antagonistic to, those of the remainder of the class. The Plaintiff is committed to pursuing the action and has obtained counsel experienced and qualified to prosecute this action.

**E.     Common questions predominate and the class action device is superior.**

42.     Prosecution as a class action will eliminate the possibility of repetitious litigation, while also providing redress of claims too small to support the expense of individual claims.

43.     Certification of the class is also appropriate because Defendants have acted uniformly with respect to all class members.

44.     The questions of law and fact common to the members of the Class predominate over any questions affecting any individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Further, even if this were not the case, numerous claims and issues are appropriate for class treatment.

45.     Joinder of all class members who are geographically dispersed and number, upon information and belief, in the thousands, is impracticable. Furthermore, the expense and burden of individual litigation makes it impractical to adjudicate these claims on an individual-by-individual basis.

46.     Upon information and belief, class members are not already engaged in litigation concerning this controversy.

47.     This Court is a desirable forum, as it is home to a large number of class members, it is geographically convenient to a majority of the parties, and Defendants are subject to the personal jurisdiction of this Court.

-9-
CLASS ACTION COMPLAINT FOR RICO VIOLATIONS

## V.    CAUSES OF ACTION

A.    **Conducting or participating in the conduct of an enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt, in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C §§ 1962(c), 1964(c).**

48.    Plaintiff alleges and incorporates by reference each of the allegations contained in the preceding and subsequent paragraphs.

49.    Plaintiff, Class Members, and Defendants are "persons," as that term is defined in 18 U.S.C. § 1961(3).

50.    At all relevant times, in violation of 18 U.S.C. § 1962(c), Defendants conducted the affairs of a certain association-in-fact enterprise identified herein, the affairs of which affected interstate commerce through a pattern of racketeering activity. The Defendants BigDeal.com, Mayfield XIII, Foundation Capital VI, L.P., First Round Capital II, L.P., Darveau-Garneau, Ramsey, Kapoor, Moldow and Kopelman constituted an enterprise under 18 U.S.C. § 1961(4)—the "BigDeal.com Enterprise." The BigDeal.com Enterprise is an association-in-fact formed for the purpose of establishing, operating, and financing an illegal gambling business through the BigDeal.com website.

51.    The Enterprise had a systemic linkage because there were contractual relationships, financial ties, and continuing coordination of activities between BigDeal.com, Mayfield XIII, Foundation Capital VI, L.P., First Round Capital II, L.P. and Darveau-Garneau, Ramsey, Kapoor, Moldow and Kopelman. BigDeal.com, Mayfield XIII, Foundation Capital VI, L.P. First Round Capital II, L.P. and Darveau-Garneau, Ramsey, Kapoor, Moldow and Kopelman shared information on a regular basis. Typically, this communication occurred by use of wires and emails in which BigDeal.com, Mayfield XIII, Foundation Capital VI, L.P. First Round Capital II, L.P. and Darveau-Garneau, Ramsey, Kapoor, Moldow and Kopelman would discuss and agree on marketing campaigns, business operations, management, investments and the structure of the Enterprise. BigDeal.com, Mayfield XIII, Foundation Capital VI, L.P. First Round Capital II, L.P. and Darveau-Garneau, Ramsey, Kapoor, Moldow and Kopelman functioned as a continuing unit for the purposes of implementing the unlawful Enterprise.

52.  The BigDeal.com Enterprise involved five or more persons who conducted, financed, managed, supervised, directed or owned all or part of the business.

53.  The BigDeal.com Enterprise was in substantially continuous operation for a period in excess of thirty days, and had gross revenue in excess of \$2,000 per day.

54.  Through the BigDeal.com website, the BigDeal.com Enterprise operated twenty-four hours a day in all fifty states and engaged in or affected interstate commerce.

55.  Defendants participated in the BigDeal.com Enterprise in the following manner:

    a.  The Defendants created and distributed the BigDeal.com penny auction website. BigDeal.com produced and distributed marketing, sales, and advertising materials used to inform and entice customers to participate in the penny auctions and thereby pay money to the website.

    b.  The Defendants Mayfield XIII, Foundation Capital VI, L.P., First Round Capital II, L.P., Darveau-Garneau, Ramsey, Kapoor, Moldow and Kopelman participated in the conduct of BigDeal.com Enterprise's illegal gambling business by:

        (i)  entering into contractual agreements, obtaining ownership interests, providing financial support, providing management support and providing marketing advice to BigDeal.com in furtherance of the enterprise.

        (ii)  allowing BigDeal.com to advertise the investments of venture capital firms, to give the site the appearance of running a legal, upstanding business with sufficient financial support and backing.

56.  The Defendants are sophisticated business entitles that knew or should have known that the BigDeal.com penny auctions constituted illegal gambling. By participating in the BigDeal.com Enterprise's illegal gambling operation in the manner described above, the Defendants violated 18 U.S.C. § 1955, which "proscribes any degree of participation in an illegal gambling business, except participation as a mere bettor." *Sanabria v. United States*, 437 U.S. 54, 70 n.26 (1978).

-11-

57.     The actions of the Defendant BigDeal.com, as set forth in paragraph 50-55(a) above, constitute the "conduct[ing] or participat[ing], directly or indirectly . . . in the conduct of [the] [E]nterprise[s]" affairs under 18 U.S.C. § 1962(c).

58.     The actions of the Defendants Mayfield XIII, Foundation Capital VI, L.P., First Round Capital II, L.P., Darveau-Garneau, Ramsey, Kapoor, Moldow and Kopelman, as set forth in paragraph 50-55(b), above, constitute the "conduct[ing] or participat[ing], directly or indirectly . . . in the conduct of [the] [E]nterprise's" affairs under 18 U.S.C. § 1962(c).

59.     Through the actions of all the Defendants, the BigDeal.com Enterprise engaged in a pattern of racketeering activity that involved tens of thousands of separate instances of illegal gambling. The BigDeal.com Enterprise knowingly solicited and accepted customers' money. The BigDeal.com Enterprise knew or should have known that its conduct was illegal. In particular, as part of that pattern of racketeering activity, the BigDeal.com Enterprise violated the following state and federal laws, from the founding of the BigDeal.com website in 2009 to 2011.

### i.     Violations of California Law

60.     The BigDeal.com Enterprise violated Cal. Penal Code § 319 because it knowingly set up and conducted a lottery. Penal Code § 319 states as follows:

> A lottery is any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or any interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift enterprise, or by whatever name the same may be known.

61.     The BigDeal.com Enterprise's "auctions" distributed property by chance among person who paid valuable consideration for the chance of obtaining such property.

### ii.     Violations of Washington law.

62.     The BigDeal.com Enterprise violated WASH. REV. CODE § 9.46.220, because it knowingly engaged in professional gambling, as defined by WASH. REV. CODE §§ 9.46.0269

-12-

1    and .0237. In particular, the BigDeal.com Enterprise engaged in professional gambling, as
2    defined in § .0269 by "knowingly engag[ing] in conduct which materially aid[ed] [a] form of
3    gambling activity[;] "knowingly accept[ing] or receive[ing] money or other property pursuant to
4    an agreement or understanding with any other person whereby he or she participate[d] . . . in
5    the proceeds of gambling activit[y];" and "conduct[ing] a lottery." The BigDeal.com Enterprise
6    also "operate[d], manage[d] or profit[ed] from the operation of a premises or location where
7    persons are charged a fee to participate in . . . lotteries, or other gambling activities" that were
8    not authorized by Washington law. *See* § 9.46.220(1)(d). The penny auctions constituted
9    gambling under Washington law because they involved "staking or risking something of value
10    upon the outcome of a contest of chance or a future contingent event not under the person's
11    control or influence, upon an agreement or understanding that the person or someone else will
12    receive something of value in the event of a certain outcome." *See* WASH. REV. CODE
13    § 9.46.0237.

14       63.    The Enterprise's penny auction business constituted "bookmaking" as defined by
15    WASH. REV. CODE § 9.46.0213 because the enterprise "accepted bets, upon the outcome of
16    future contingent events [*i.e.,* whether another player will bid], as a business or in which the
17    bettor is charged a fee or 'vigorish' for the opportunity to place a bet."

18       64.    The Enterprise's penny auction business constituted operating a "gambling
19    device" as defined by WASH. REV. CODE § 9.46.0241. "Gambling device," means: "(1) Any
20    device or mechanism the operation of which a right to money, credits, deposits or other things
21    of value may be created, in return for a consideration, as the result of the operation of an
22    element of chance, including, but not limited to slot machines, video pull-tabs, video poker, and
23    other electronic games of chance; (2) any device or mechanism which, when operated for a
24    consideration, does not return the same value or thing of value for the same consideration upon
25    each operation thereof; and (3) any device, mechanism, furniture, fixture, construction or
26    installation designed primarily for use in connection with professional gambling . . . . " WASH.
27    REV. CODE § 9.46.0241. Ownership, interest in, or possession of a gambling device is a
28    violation of § 9.46.215.

1    65.    Proof that an object satisfies any one of these three definitions is sufficient to
2    establish a violation of § 9.46.0241. *See Bullseye Distrib. LLC v. State Gambling Comm'n*, 110
3    P.3d 1162, 1165 (Wash. Ct. App. 2005).

4    66.    The BigDeal.com Enterprise own[ed], maintain[ed], and possesse[d] an illegal
5    gambling device under all three definitions above: (1) BigDeal.com's internet website was a
6    device or mechanism, the operation of which, the right to things of value (merchandise), were
7    created, in return for consideration (Bid Pack fees and $.75 bids), as a result of the operation of
8    an element of chance (chance of being the last bid); BigDeal.com's website was like slot
9    machine, video pull-tabs, video poker, and other electronic games of chance for money or
10   merchandise; (2) BigDeal.com's website was operated for consideration (bid packs and $.75
11   bids), and when the player clicked on "bid," the device did not return the same value for the
12   same consideration upon each operation thereof; and, (3) BigDeal.com's website was designed
13   primarily for use in connection with professional gambling.

14   67.    The BigDeal.com Enterprise's penny auctions constituted operating a lottery.
15   "Lottery," as defined by RCW 9.46.0257, "means a scheme for the distribution of money or
16   property by chance, among persons who have paid or agreed to pay a valuable consideration for
17   the chance."

18   68.    The BigDeal.com Enterprise's "auctions" charged $.75 consideration for each
19   bid. Players bid in an attempt to win prizes. The outcome of each "bid" was based on chance,
20   because players could not control other players' bidding (because any player could bid after
21   them), and players did not know the outcome of their $.75 bet in advance. There was a chance
22   of loss with each bid. The Enterprise charged consideration for the chance to win prizes.

23   69.    Lotteries are illegal gambling under California and Washington law unless there
24   is no consideration paid or the lottery is operated by the state or licensed charities. The
25   BigDeal.com Enterprise violated California and Washington gambling laws by operating
26   unlicensed lotteries for consideration.

27   70.    Under California law, every person who contrives, prepares, sets up, proposes, or
28   draws any lottery, is guilty of a misdemeanor. Penal Code § 320.

-14-

71.     Under Washington law, first-degree professional gambling constitutes a Class B felony punishable by imprisonment for not more than ten years, a fine of not more than $20,000 or both. *See* §§ 9.46.220; 9A.20.021.

72.     As a result, the BigDeal.com Enterprise violations constitute acts of racketeering activity under 18 U.S.C. § 1961(1)(A).

**iii.     Violations of federal law, 31 U.S.C. § 5363, (Unlawful Internet Gambling Enforcement Act of 2006) by the Defendant BigDeal.com.**

73.     The BigDeal.com Enterprise's penny auctions involved "the staking or risking by any person of something of value upon the outcome of . . . a game subject to chance, upon an agreement or understanding that the person or another person will receive something of value in the event of a certain outcome." The penny auctions also involved "the purchase of a chance or opportunity to win a lottery or other prize (which opportunity to win is predominantly subject to chance"). *See* 31 U.S.C. § 5362(1)(A) & (B). Accordingly, the penny auctions were bets and wagers under the Unlawful Internet Gambling Enforcement Act of 2006. The BigDeal.com Enterprise knowingly received bets and wagers through the use of its BigDeal.com internet website when those bets and wagers were unlawful under Washington laws set forth above, as well as the laws of other states.

74.     In addition, while engaged in the business of betting or wagering, the BigDeal.com Enterprise "knowingly accept[ed], in connection with the participation of another person in unlawful Internet gambling--(1) credit, or the proceeds of credit, extended to or on behalf of such other person (including credit extended through the use of a credit card); (2) . . . electronic fund transfer[s], or funds transmitted by or through a money transmitting business, or the proceeds of an electronic fund transfer or money transmitting service, from or on behalf of such other person; (3) . . . check[s], draft[s], or similar instrument[s] . . . drawn by or on behalf of such other person and . . . drawn on or payable at or through any financial institution . . . ." 31 U.S.C. § 5363. By accepting these instruments from persons engaged in unlawful Internet gambling, the BigDeal.com Enterprise violated 31 U.S.C.§ 5363. The violation of § 5363

1 constitutes a federal crime punishable by a fine under title 18, a term of imprisonment of up to
2 five years, or both.

3     75.     The BigDeal.com Enterprise's violations of § 5363 occurred when BigDeal.com
4 first began conducting its internet penny auctions and continued through 2011. These violations
5 constitute acts of racketeering activity under 18 U.S.C. § 1961(1)(A).

6     **iv.**     **Violations of federal law, 18 U.S.C. § 1955, by the BigDeal.com**
7           **Enterprise.**

8     76.     By operating the penny auctions on its website, the BigDeal.com Enterprise
9 conducted, financed, managed, supervised, directed, and owned an illegal gambling business.
10 BigDeal.com's penny auctions violated the laws of California and Washington as well as the
11 laws of all other states. In addition, BigDeal.com's illegal gambling business (1) involved five
12 or more persons who conduct, finance, manage, supervise, direct, or own all or part of such
13 business; (2) has been or remains in substantially continuous operation for a period in excess of
14 thirty days, and (3) has had gross revenues of at least $2,000 per day.

15     77.     By operating its illegal gambling business in this manner, the BigDeal.com
16 Enterprise violated 18 U.S.C. § 1955. The violation of § 1955 constituted a federal crime
17 punishable by a fine under title 18, a term of imprisonment of up to five years, or both.

18     78.     The BigDeal.com Enterprise's violations of § 1955 occurred when BigDeal.com
19 first began conducting its internet penny auctions and continued through 2011. These violations
20 constitute acts of racketeering activity under 18 U.S.C. § 1961(1)(A).

21     **v.**     **Violations of federal law, 18 U.S.C. § 1955 by the Defendants Mayfield**
22           **XIII, Foundation Capital VI, L.P., First Round Capital II, L.P., Nicolas**
          **Darveau-Garneau, Brandon Ramsey, Rajil Kapoor, Charles Moldow and**
23           **Josh Kopelman.**

24     79.     The Defendants Mayfield XIII, Foundation Capital VI, L.P., First Round Capital
25 II, L.P., Darveau-Garneau, Ramsey, Kapoor, Moldow and Kopelman had ownership interests in
26 BigDeal.com, entered into contractual agreements, and provided financial support, management
27 support and marketing advice to BigDeal.com in furtherance of the gambling business. These
28 violations constitute acts of racketeering activity under 18 U.S.C. § 1961(1)(A).

-16-

vi.     **Violations of 18 U.S.C. § 1344(2)—bank fraud—by all Defendants.**

80.     Plaintiff alleges and incorporates by reference each of the allegations contained in the preceding and subsequent paragraphs.

81.     In conducting the penny auctions described above, the BigDeal.com Enterprise required individuals who wished to participate in them to purchase bids by credit card transactions over the Internet.

82.     The credit card transactions required by the BigDeal.com Enterprise involved funds in the custody and control of federally insured banks.

83.     By means of its penny actions and the promotion of those auctions on its website, the Enterprise knowingly executed or attempted to execute a scheme to obtain—by means of false and fraudulent pretenses, representations, promises and omissions—funds from the Plaintiff, and others similarly situated to him, that were under the control of federally insured financial institutions.

84.     These false and fraudulent pretenses, representations, promises, and omissions included the following:

        a.     The BigDeal.com website did not advise players that its website violated state and federal gambling laws.

        b.     The BigDeal.com website purposely made it appear that it was a legal website in compliance with state and federal laws.

        c.     BigDeal.com failed to state the odds of winning the auctions.

        d.     BigDeal.com did not advise participants that they have no chance of winning if other participants placed bids with Bid Buddy, because Bid Buddy was programed to beat all other bidders.

        e.     BigDeal.com did not advise when a Bid Buddy was in play and thus, they had no chance to win the prize.

        f.     BigDeal.com's website enticed participation in the gambling scheme by falsely advertising: "HUGE SAVINGS. UP TO 98% OFF! "It's as easy as 1-2-3". "Winners save around 75% on average, and many save 98% or

-17-

1   even more." "Winning can be surprisingly easy or easier said than done,

2   depending on who else is bidding." "We guarantee you a fair chance to

3   win a great deal". "Everyone's a winner on BigDeal.com". "You can't

4   lose" and "come on, you have nothing to lose". "Can everyone be a

5   winner? Absolutely!"

6   g.   BigDeal.com's website enticed participation in the gambling scheme by

7        falsely claiming that it was easy to win, that participants could expect to

8        save large amounts of money and that they "can't lose".

9   h.   BigDeal.com's website enticed participation in the gambling scheme by

10       falsely claiming that BigDeal.com's auctions required skill, but these

11       statements were false because winning was contingent upon chance, since

12       anyone could place another bid and players did not have control over

13       other players' actions. Furthermore, the use of the Bid Buddy did not

14       involve the use of a player's skill.

15   i.   BigDeal.com's website enticed participation in the scheme by falsely

16       promising that the merchandise was new and that it was sold with good

17       title, when in fact much of the merchandise, such as Apple, Inc.,

18       merchandise was sold without good title or warranties, because Apple

19       does not allow the sale or redistribution of its products, other than through

20       authorized dealers.

21   j.   BigDeal.com's website enticed participation in the scheme by advertising

22       the Defendant venture capital firms, Mayfield XIII, Foundation Capital

23       VI, L.P., First Round Capital II, L.P., prominently on the BigDeal.com

24       website, to give the site the appearance of running a legal and upstanding

25       business.

26   85.   The false and fraudulent pretenses, representations, promises, and omissions set

27   forth above are material:   they have a natural tendency to influence—or were capable of

28

-18-

CLASS ACTION COMPLAINT FOR RICO VIOLATIONS

1   influencing—the Plaintiff and other similarly situated individuals, to participate in the
2   BigDeal.com penny auctions.

3       86.    Plaintiff and other similarly situated individuals relied on the material false and
4   fraudulent pretenses, representations, promises, and omissions set forth and lost money as a
5   result of reliance.

6       87.    In engaging in the conduct of the penny auctions and in making the false and
7   fraudulent pretenses, representations, promises, and omissions set forth above, the Enterprise
8   intended to defraud the Plaintiff and other similarly situated individuals by enticing them to
9   participate in the penny auctions and by obtaining—through credit card transactions— moneys,
10  funds, credits, assets, securities, or other property owned by, or under the custody or control of
11  federally insured banks and financial institutions.

12      88.    But for the Enterprise's illegal scheme, which was intentionally designed to
13  obtain money, credit and funds under the custody or control of federally insured banks and
14  financial institutions, the Plaintiff and other similarly situated individuals would not have been
15  injured.

16      89.    As a direct and proximate cause of the Enterprise's scheme to defraud, as set
17  forth above, the Plaintiff and other similarly situated individuals were directly injured because
18  they completed credit card transactions to pay fees for bid packs and fees for bidding. The
19  money of the Plaintiff and other similarly situated individuals was the direct target of the
20  Enterprise's scheme to defraud.

21      90.    By accepting credit card payments for bids and bidding fees from the Plaintiff
22  and from other similarly situated individuals, and engaging in the scheme to defraud, as set forth
23  above, the Enterprise engaged in and affected interstate commerce.

24      91.    By engaging in the conduct set forth in paragraphs 81-90, the Enterprise violated
25  18 U.S.C. § 1344(2). Each payment for bids and bidding fees by the Plaintiff and other
26  similarly situated individuals constituted a violation of § 1344(2). These violations of §1 344(2)
27  are acts of racketeering activity under 18 U.S.C. § 1961. Considered as a whole, and along with

28

1  the other acts of racketeering set forth in this Complaint, these violations constitute a pattern of
2  racketeering activity under 18 U.S.C. § 1961(5).

3    **vii.    Violation of 18 U.S.C. § 1343—wire fraud—by all Defendants.**

4        92.    By engaging in the conduct set forth in paragraph 84 above, the Enterprise
5  "devised or intend[ed] to devise [a] scheme or artifice to defraud, or for obtaining money or
6  property by means of false or fraudulent pretenses, representations, or promises," and
7  "transmit[ed] or cause[d] to be transmitted by means of [a] wire . . . communication in interstate
8  or foreign commerce . . . for the purpose of executing [the] scheme or artifice," in violation of
9  18 U.S.C. §1343.

10       93.    In particular, by maintaining its website—which contained the false or fraudulent
11 pretenses, representations, promises, or omissions set forth above—and by requiring individuals
12 who wished to participate in them (including the Plaintiff and similarly situated individuals) to
13 purchase bids by credit card transactions over the Internet, the Enterprise used interstate wire
14 communications to facilitate its fraudulent scheme.

15       94.    The false and fraudulent pretenses, representations, promises, and omissions set
16 forth in paragraph 84 are material: they have a natural tendency to influence or are capable of
17 influencing the Plaintiff and other similarly situated individuals to participate in the
18 BigDeal.com penny auctions.

19       95.    Plaintiff and other similarly situated individuals relied on the material false and
20 fraudulent pretenses, representations, promises, and omissions set forth and lost money as a
21 result of reliance.

22       96.    In using wire communications to facilitate its fraudulent scheme, the Enterprise
23 intended to defraud the Plaintiff and other similarly situated individuals by enticing them to
24 purchase bids and participate in the penny auctions.

25       97.    But for the Enterprise's illegal scheme, which was intentionally designed to
26 obtain money, credit and funds through the use of the wires, the Plaintiff and other similarly
27 situated individuals would not have been injured.

28

1    98.    As a direct and proximate cause of the Enterprise's scheme to defraud, as set
2    forth above, the Plaintiff and other similarly situated individuals were directly injured because
3    they lost money to Defendants.    The money of the Plaintiff and other similarly situated
4    individuals was the direct target of Defendants' scheme to defraud.

5    99.    By engaging in the conduct set forth in paragraphs 83-88 above, the Enterprise
6    violated 18 U.S.C. § 1343. Each wire communication in furtherance of its scheme to defraud
7    violated § 1343. These violations of § 1343 constitute acts of racketeering activity under 18
8    U.S.C. § 1961.

9    **viii.    Pattern of racketeering activity.**

10    100.    The acts of racketeering and the collection of unlawful debts in which the
11    Defendants engaged on behalf of the BigDeal.com Enterprise were continuous and related. All
12    of these acts were committed in furtherance of the BigDeal.com Enterprise's efforts to establish,
13    operate, and finance an illegal gambling business through the BigDeal.com website.

14    **ix.    Injury to property.**

15    101.    When the Plaintiff and other similarly situated individuals paid fees to participate
16    in the BigDeal.com penny auctions, they had no basis to know or suspect that their conduct was
17    part of an illegal gambling, bank fraud or wire fraud operation. The BigDeal.com website gave
18    the appearance of being a legitimate business, with the approval of the Better Business Bureau
19    and the sponsorship of major credit card companies and venture capital firms.    In addition,
20    BigDeal.com did not disclose that it was an illegal gambling website.    The pattern of
21    racketeering activity and the collection of unlawful debts described above proximately caused
22    the Plaintiff and the members of the class to pay millions of dollars in fees for "bids" to an
23    illegal gambling business, thereby proximately causing injury to their property.

24    **x.    Relief Requested.**

25    102.    Under 18 U.S.C. § 1964(c) the Defendants are jointly and severally liable to the
26    Plaintiff and to the proposed class members for three times the amount of the injury to property
27    that Defendants have proximately caused, plus the costs of bringing this suit, including
28    reasonable attorneys' fees.

**B.** **Conspiracy to violate 18 U.S.C. § 1962(c), in violation of § 1962(d).**

103. Defendants entered into a conspiracy to violate 18 U.S.C. § 1962(c) by conducting and participating, directly or indirectly in the conduct of the BigDeal.com Enterprise's affairs through a pattern of racketeering activity and the collection of unlawful debts. The enterprise that Defendants conspired to conduct is described in paragraphs 50 to 59 above: it is an association-in-fact formed with the object of establishing, operating, and financing an illegal gambling business, bank fraud and wire fraud operation through the BigDeal.com website.

104. The conspiracy began when the Defendants entered into agreements with BigDeal.com to take an ownership interest, and provide management and financing support. The terms of these agreements required BigDeal.com to conduct its business in a manner dictated by the Defendants. The Defendant venture capital participants allowed BigDeal.com to advertise their venture capital expertise on its website, giving the site the appearance of running a legal, upstanding business with tremendous financial backing. The conspiracy continued to operate until 2011 when BigDeal.com shut down its operations after a similar lawsuit was filed against it.

105. In furtherance of the conspiracy, each of the Defendants agreed that those associated with the Enterprise would commit the following acts of racketeering, as defined by 18 U.S.C. § 1961(1), and would engage in the collection of unlawful debts, as defined by § 1961(6):

        a.    conducting penny auctions by the BigDeal.com website, and those individuals responsible for operating it, that involved (1) payment of consideration to participate in the penny auctions; (2) award of a prize to the successful bidder; and (3) award of that prize contingent upon chance. Because the BigDeal.com penny auctions possessed those characteristics, they violate the state laws set forth above, and constitute acts of racketeering under 18 U.S.C. § 1961(1). Since BigDeal.com was established in 2009, the company conducted thousands of these penny

-22-

1      auctions on the BigDeal.com website. Each of these auctions constitutes

2      illegal gambling under those state laws. The Defendants agreed to

3      conduct these penny auctions from the time that they that they entered

4      into agreements to provide financial services to BigDeal.com.

5      b.      conducting, managing, supervising, directing and advise an illegal

6      gambling business run by BigDeal.com, in violation of 18 U.S.C.§ 1955.

7      The Defendant BigDeal.com agreed to conduct, manage, supervise, and

8      direct the illegal gambling business involving the penny auctions on the

9      BigDeal.com website.

10      c.      management and financing of an illegal gambling business by Defendant

11      BigDeal.com, in violation of 18 U.S.C. § 1955. Defendants agreed to

12      provide management and financing to BigDeal.com. By agreeing to

13      provide those services, Defendants agreed to facilitate the operation and

14      management of the BigDeal.com penny auctions by those individuals

15      responsible for controlling them.

16      d.      the collection of unlawful debts, *i.e.*, "debts incurred or contracted in

17      gambling activity which was in violation of the law of the United States,

18      a State or political subdivision thereof," and which were "incurred in

19      connection with the business of gambling in violation of the law of the

20      United States, a State or political subdivision thereof[;]" *see* 18 U.S.C.

21      § 1961(6); by agreeing to provide the financial services set forth above,

22      Defendants agreed to engage in the collection of unlawful debts, *i.e.*,

23      "debt[s] incurred or contracted in gambling activity which was in

24      violation of the law of the United States, a State or political subdivision

25      thereof," and which were "incurred in connection with the business of

26      gambling in violation of the law of the United States, a State or political

27      subdivision thereof[;] *see* 18 U.S.C. § 1961(6); by agreeing to collect

28      those debts, Defendants, agreed to facilitate the operation and

-23-

management of the BigDeal.com penny auctions by those individuals responsible for controlling them.

e. the violation of 31 U.S.C. § 5363, by Defendants. By providing BigDeal.com with the management and financing set forth above, Defendants agreed to the violation of 31 U.S.C. § 5363; in particular, these defendants agreed that BigDeal.com would:

> ". . . knowingly accept, in connection with the participation of another person in unlawful Internet gambling—(1) credit, or the proceeds of credit, extended to or on behalf of such other person (including credit extended through the use of a credit card); (2) an electronic fund transfer, or funds transmitted by or through a money transmitting business, or the proceeds of an electronic fund transfer or money transmitting service, from or on behalf of such other person; (3) any check, draft, or similar instrument which is drawn by or on behalf of such other person and is drawn on or payable at or through any financial institution[.]"

31 U.S.C. § 5363.

f. the violation of 18 U.S.C. § 1344(2)—bank fraud, by Defendants. By means of its penny actions and the promotion of those auctions on its website, Defendants knowingly executed or attempted to execute a scheme to obtain—by means of false and fraudulent pretenses, representations, promises and omissions as more particularly set out in paragraph 84—funds from the Plaintiff, and others similarly situated to him, that were under the control of federally insured financial institutions.

g. the violation of 18 U.S.C. § 1343—wire fraud by Defendants. By engaging in the conduct set forth in paragraphs 81 to 84 above, Defendants "devised or intend[ed] to devise [a] scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," and "transmit[ed] or cause[d] to be transmitted by means of [a] wire . . . communication in interstate or foreign commerce . . . for the purpose of executing [the]

-24-

1   scheme or artifice". In particular, by maintaining its website—which

2   contained the false or fraudulent pretenses, representations, promises, or

3   omissions set forth in paragraph 84—and by requiring individuals who

4   wished to participate in them (including the Plaintiff and similarly

5   situated individuals) to purchase bids by credit card transactions over the

6   Internet, Defendants used interstate wire communications to facilitate the

7   fraudulent scheme.

8   106.   In furtherance of the conspiracy, Defendants engaged in the overt acts set forth in

9   paragraph 105 above. All of these acts constitute either acts of racketeering under 18 U.S.C. §

10  1961(1) or the collection of unlawful debts, as defined by § 1961(6).

11  107.   In furtherance of the conspiracy, each of the Defendants agreed that those

12  associated with the Enterprise would commit the acts of bank fraud and wire fraud as more

13  particularly set out in this complaint.

14  108.   The acts of racketeering and the collection of unlawful debts in which

15  Defendants engaged on behalf of the BigDeal.com Enterprise are continuous and related. All of

16  these acts were committed in furtherance of the Enterprise's efforts to establish, operate, and

17  finance an illegal gambling business through the BigDeal.com website.

18  109.   When the Plaintiff and similarly situated individuals paid fees to participate in

19  the BigDeal.com penny auctions, they had no basis to know or suspect that their conduct was

20  part of an illegal gambling, bank fraud or wire fraud operation. The BigDeal.com website gave

21  the appearance of being a legitimate business, with the approval of the Better Business Bureau

22  and the sponsorship of venture capital firms. The pattern of racketeering activity and the

23  collection of unlawful debts described above has proximately caused the Plaintiff and the

24  members of the proposed class to pay millions of dollars in fees for "bids" to an illegal

25  gambling business, thereby proximately causing injury to their property.

26  110.   Under 18 U.S.C. § 1964(c), Defendants are jointly and severally liable to the

27  Plaintiff and to the proposed class members for three times the amount of the injury to property

28

1  that the Defendants proximately caused, plus the costs of bringing this suit, including

2  reasonable attorneys' fees.

3  ## VI.  DEMAND FOR RELIEF

4  WHEREFORE, for the foregoing reasons, the Plaintiff and the class respectfully request

5  that they be awarded the following relief:

6  1.  The Court determine that this action may be maintained as a class action pursuant

7  to Rule 23(b)(3) of the Federal Rules of Civil Procedure, with the Plaintiff as representative of

8  the Class and his counsel as counsel for the Class.

9  2.  The Plaintiff and the Class be granted an award of damages in such amount to be

10  determined at trial, with trebling and statutory penalties.

11  3.  Plaintiff and the Class recover their costs of suit, including reasonable attorneys'

12  fees and expenses as provided by law.

13  4.  Plaintiff and the Class be awarded all pre- and post-judgment interest permitted

14  by law.

15  5.  Plaintiff and the Class are granted such other, further, and different relief as the

16  nature of the case may require or as may be determined to be just, equitable, and proper by this

17  Court.

18  ## JURY DEMAND

19  Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

20  trial by jury of all issues that may be so tried.

21

22  DATED: February 19, 2013          **GREEN & NOBLIN, P.C.**

23

24  By: _____
                 Robert S. Green

25

26  James Robert Noblin
    700 Larkspur Landing Circle, Suite 275

27  Larkspur, CA 94939
    Telephone: (415) 477-6700

28  Facsimile: (415) 477-6710

-26-

CLASS ACTION COMPLAINT FOR RICO VIOLATIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

William W. Houck, No. 3122387
HOUCK LAW FIRM, P.S.
4045 262nd Ave.
Issaquah, Washington, 98029
Telephone: (425) 392-7118
Facsimile: (206) 337-0916
Email: houcklaw@gmail.com

Attorneys for Plaintiff

-27-